Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | Arlander Keys |
|---|---|---|---|
| **CASE NUMBER** | 95 C 6890 | **DATE** | 4/19/2000 |
| **CASE TITLE** | Robert H. Tice, et al vs. American Airlines ||||

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ■ Status hearing set for 4/28/00 at 9:00 A.M..
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Plaintiffs' Motion for Order Compelling Answers to Questions Posed at Depositions (133-1) is denied. /AK/

(11) ■ [For further detail see order attached to the original minute order.]

| | | |
|---|---|---|
| | No notices required, advised in open court. | |
| | No notices required. | number of notices: 4 |
| ✓ | Notices mailed by judge's staff. | date docketed: APR 20 2000 |
| | Notified counsel by telephone. | |
| | Docketing to mail notices. | |
| | Mail AO 450 form. | docketing deputy initials |
| ✓ | Copy to judge/~~magistrate judge~~. | date mailed notice: 4/19/2000 |
| VKD | courtroom deputy's initials | VKD mailing deputy initials |
| | Date/time received in central Clerk's Office | |

Document Number: 155

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DOCKETED
APR 2 0 2000

ROBERT H. TICE, et al., ) No. 95 C 6890
    Plaintiffs, )
        v. ) Judge Matthew F. Kennelly
)
) Magistrate Judge
AMERICAN AIRLINES, INC., )   Arlander Keys
)
    Defendant. )

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Plaintiffs' Motion for Order Compelling Answers to Questions Posed at Depositions.[1] For the following reasons, Plaintiffs' motion is denied.

## BACKGROUND

Plaintiffs, in this age discrimination action, are all (with the exception of one who is still currently employed) former American Airlines pilots. Prior to turning sixty years old, each Plaintiff was employed as First Pilot (also referred to as Captain or Pilot in Command) on American Airlines' commercial aircraft. Commercial aircraft cockpit crews include: a First Pilot; a Copilot (also referred to as Second in Command); and a Flight Officer (also referred to as Flight Engineer).

---

[1]This motion was precipitated by questions Plaintiffs asked during the depositions of top American Airlines officials. American Airlines refused to answer these questions because they related to confidential safety reports.

The Federal Aviation Administration ("FAA") has a rule that prevents pilots from serving as either First Pilot or Copilot after their sixtieth birthdays. 14 C.F.R. §121.383.(c). However, there is no rule preventing pilots from serving as Flight Officers after they turn sixty.

Although Plaintiffs wanted to continue working for American Airlines after their sixtieth birthdays, as Flight Officers, American Airlines refused to allow this.[2] In support of its position, American Airlines cites its policies which: 1) require that all cockpit crew members (hired after 1964) must be qualified to pilot commercial aircraft under the FAA regulations; 2) prohibit any pilot, regardless of age, from downbidding into another job to evade a disqualifying event; and 3) utilize the Flight Engineer position as an on-the-job training seat for future Copilots and First Pilots. American Airlines has also expressed safety concerns, such as the possibility that former First Pilots who move down to Flight Engineer positions would engage in back seat driving and/or would refuse to follow orders from current First Pilots.

Plaintiffs, who were forced to retire, allege that American

---

[2]Apparently many other major commercial airlines allow their pilots to move down into the position of Flight Engineer after reaching sixty years of age.

2

Airlines' policies are merely a guise for age discrimination.  In the matter at bar,[3] Plaintiffs seek access to private consultants' "top to bottom" safety reports ("the Safety Reports"), which were commissioned by American Airlines.  American Airlines objects to disclosure of the Safety Reports under the self-critical analysis privilege.

## DISCUSSION

In general, courts agree that the scope of discovery should be broad in order to aid in the search for truth.  *United States v. White*, 950 F.2d 426, 430 (7th Cir. 1991); *Allendale Mut. Ins. Co. v. Bull Data Sys. Inc.*, 152 F.R.D. 132, 135 (N.D. Ill. 1993). Although the assertion of a privilege interferes with the full disclosure of facts during discovery, certain privileges are, nonetheless, accepted and allowed.

Here, Defendant has invoked the relatively unestablished self-critical analysis privilege to avoid disclosure of the Safety Reports.  The Seventh Circuit Court of Appeals has not yet directly addressed whether a self-critical analysis privilege exists under federal common law.  However, a number of federal courts have

---

[3]The other matter raised in the instant motion -- seeking the identity of certain experts -- appears to have already been resolved.

3

recognized that self-critical analyses are generally privileged and not subject to discovery. *See, e.g., Morgan v. Union Pacific R.R. Co.*, 182 F.R.D. 261, 264 (N.D. Ill. 1998) (Williams, J.); *In re Crazy Eddie Sec. Litig.*, 792 F. Supp. 197, 205-06 (E.D.N.Y. 1992); *see also Coates v. Johnson & Johnson*, 756 F.2d 524, 551 (7th Cir. 1985)(recognizing "prevailing view" that self-critical portions of affirmative action plans are privileged).

Assuming that federal common law recognizes the self-critical analysis privilege, for purposes of the matter at bar, this Court must next address whether it is applicable here. The parameters of the privilege, like the existence of the privilege itself, are rather vague. The fundamental purpose of the privilege, however is to "'protect from disclosure documents containing candid and potentially damaging self-criticism.'" *Morgan*, 182 F.R.D. at 264 (quoting Donald P. Vandegrift, Jr., *The Privilege of Self-Critical Analysis: A Survey of the Law*, 60 ALB. L. REV. 171, 175-76 (1996)). Because the privilege "is grounded on the premise that 'disclosure of documents reflecting candid self-examination will deter or suppress socially useful investigations and evaluations or compliance with the law,'" *id.* (quoting *Sheppard v. Consolidated Edison Co.*, 893 F. Supp. 6, 7 (E.D.N.Y. 1995)), the Court must

"balance the public interest in protecting candid corporate self-assessments against the private interest of the litigant in obtaining all relevant documents through discovery." *Morgan*, 182 F.R.D. at 264.[4]

Two different formulations of the general balancing test have emerged. When determining whether the self-critical analysis privilege applies to reports in an employment discrimination case, the Court looks at whether the party asserting the privilege establishes that: (1) the materials were prepared for mandatory government reports; (2) the privilege is being asserted only to protect subjective, evaluative materials; (3) the privilege is not being asserted to protect objective data in the same reports; and (4) the policy favoring exclusion clearly outweighs the plaintiff's need for the information. *Id.* at 264-65.

However, in a tort context/personal injury case, the self-critical analysis privilege "does not require the party asserting

---

[4]The privilege was "initially developed to promote public safety by encouraging businesses to voluntarily evaluate their safety procedures." *Morgan*, 182 F.R.D. at 265 (citing *Bredice v. Doctors Hosp. Inc.* 50 F.R.D. 249, 251 (D.D.C. 1970), *aff'd* 479 F.2d 920 (D.C. Cir. 1973)(finding privilege applicable to hospital's peer review meeting minutes and report, in which medical staff discussed and analyzed the doctors' decisions and judgment in a case that resulted in a death and medical malpractice lawsuit).

the privilege to establish that the report was prepared in response to a governmental mandate." *Id.* at 265. Rather, in the tort context, the Court looks at whether the party asserting the privilege has established that: (1) the information sought resulted from a critical self-analysis undertaken by the party seeking protection; (2) the public has a strong interest in preserving the free flow of the type of information sought; (3) the information is of the type whose flow would be curtailed if discovery were allowed; and (4) the document was prepared with the expectation that it would be kept confidential, and has in fact been kept confidential. *Morgan*, 182 F.R.D. at 266 (citing *Dowling v. American Hawaii Cruises, Inc*, 971 F.2d 423, 426 (9th Cir. 1992)).

Thus, there is a "fundamental difference between tort cases, which involve voluntary self-evaluations designed to enhance <u>safety</u>, and discrimination cases, which involve the fairness of disclosing documents written pursuant to a legal mandate." *Morgan*, 182 F.R. D. at 266 (emphasis added).

Here, the Court is presented with a hybrid of the two scenarios. The underlying lawsuit is one of employment discrimination, and the Safety Reports were prepared pursuant to an FAA/governmental mandate. However, this does not seem to be the type of governmental mandate referred to in other employment cases,

6

which tend to concern employment issues such as statistical analyses about employees (age, race, gender, religion), affirmative action compliance reports, and EEO related studies. Rather, the Safety Reports at issue here resulted from American Airlines' top-to-bottom self-analysis of its operations (done in order to maximize safety and prevent personal injuries or other torts). Moreover, Plaintiffs seek the Safety Reports, not for objective statistical information, but in order to refute any <u>safety</u> related claims American Airlines' may make to defend its employment practices with regard to the Flight Engineer position.

In light of these mixed facts, the Court finds that the tort/personal injury test is the more appropriate balancing test to apply to the case at bar. In applying the tort based self-critical analysis privilege test, the Court finds that American Airlines has sufficiently established the four elements. The information sought resulted from a critical self-analysis undertaken by American Airlines. The public has a strong interest in preserving the free flow of airline safety (monitoring and improvement) related information. Although, it is unlikely that American Airlines would abandon safety reviews or stop making safety improvements (it would be bad for business to do so), certainly the flow of internal airline safety information would be somewhat curtailed if discovery

7

were allowed. Finally, the Safety Reports were prepared with the expectation that they would be kept confidential, and have in fact been kept confidential.[5]

Finally, even if the Court's assumption that the self-critical analysis privilege exists is erroneous, the *in camera* review of the Safety Reports, conducted by this Court, revealed nothing pertaining to Flight Engineers (or any other information directly relating to the issues in this case). Therefore, the Court finds that the information contained in the Safety Reports is irrelevant (or at best, of the weakest possible level of relevance), and that Plaintiffs do not need the information contained in the Safety Reports to make their case, or to counter potential defenses.

## CONCLUSION

American Airlines has established the applicability of the self-critical analysis privilege to the Safety Reports that Plaintiffs seek. Moreover, even if that privilege did not apply,

---

[5] Even if the employment discrimination based self-critical analysis privilege test were the one to properly apply, American Airlines would still prevail. The Safety Reports were prepared pursuant to FAA requirements, but what is in the Safety Reports (and is sought to be protected) is much more akin to subjective evaluative materials rather than objective data. Finally, the policy favoring exclusion clearly outweighs Plaintiffs' need for the information. Additionally, as noted in the last paragraph of the Discussion section of this Opinion, the information contained in the Safety Reports is not helpful to Plaintiffs.

this Court's *in camera* review of the Safety Reports provides no basis upon which to compel their disclosure.

**IT IS THEREFORE ORDERED** that:

Plaintiffs' Motion for Order Compelling Answers to Questions Posed at Depositions be, and the same hereby is, **DENIED**.

DATED: April 19, 2000     ENTER:

*[signature]*
ARLANDER KEYS
United States Magistrate Judge

9