

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 95 C 6890 | **DATE** | 8/29/2001 |
| **CASE TITLE** | Tice vs. American Airlines | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] For the reasons set forth on the attached order, defendant's motion to dismiss (234-1) is granted. Defendant's motion for summary judgment (20-1), plaintiff's motion for partial summary judgment (206-1), and plaintiff's motion to strike and exclude various matters (220-1, 229-1) are denied as moot. The case is dismissed for lack of subject matter jurisdiction.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | Document Number |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | AUG 30 2001 date docketed | |
| ✓ | Docketing to mail notices. | | | 238 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | FILED FOR DOCKETING 01 AUG 29 PM 4:32 | | |
| OR | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

Minute Order Form (06/97)

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ROBERT H. TICE, et al., | ) |
| Plaintiffs, | ) |
| v. | ) Case No. 95 C 6890 |
| AMERICAN AIRLINES, INC., | ) |
| Defendant. | ) |

**DOCKETED**

**AUG 3 0 2001**

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

The plaintiffs in this case piloted commercial airplanes for defendant American Airlines until they were forced out of the pilot's seat at age 60 by the Federal Aviation Administration, and then were thrown off the flight deck by American. In 1995, they brought this lawsuit against American, claiming age discrimination in violation of the Age Discrimination in Employment Act.

An FAA regulation provides that no person may serve as a commercial pilot or copilot after reaching age 60. *See* 14 C.F.R. § 121.383(c). Some aircraft require three officers in the cockpit; the third officer, called a "flight officer" by American, monitors the aircraft's fuel, electrical, hydraulic and other systems but does not pilot the aircraft. The FAA rule does not apply to flight officers and thus does not prevent former pilots from serving in that capacity after they reach age 60. Though some airlines permit pilots disqualified by the age-60 rule to remain in the cockpit in the flight officer position, American does not. It claims that it has a rigid "up-or-out" policy under which flight officers must be eligible to advance to the position of pilot,

see *Murnane v. American Airlines, Inc.*, 667 F.2d 98, 99 (D.C. Cir. 1981), thus permitting the airline to use the flight officer slot as a training ground for future pilots.

The case was remanded to this Court following the Seventh Circuit's reversal of another district judge's dismissal of plaintiffs' claims on grounds of claim preclusion (another group of American pilots had sued on similar grounds and lost). *Tice v. American Airlines, Inc.*, 162 F.3d 966 (7th Cir. 1998). Since remand, discovery has been completed. American has moved for summary judgment on plaintiff's claims, and plaintiffs have moved for summary judgment as to one of American's defenses. After these motions were fully briefed, American moved to dismiss the case for lack of subject matter jurisdiction. In the motion, it argues that plaintiffs' claims turn on issues that are subject to the mandatory arbitration provisions of the Railway Labor Act, which applies to commercial airlines. If so, the Court lacks subject matter jurisdiction even though plaintiffs have brought their claims pursuant to another federal statute, the ADEA. *See Brown v. Illinois Central R.R. Co.*, 254 F.3d 654 (7th Cir. 2001) (holding that RLA precluded a claim under the Americans with Disabilities Act).

In 1926, Congress enacted the RLA to promote stability in labor-management relations in the railroad industry and prevent transport service interruptions by providing a comprehensive framework for resolving labor disputes. In 1936, the RLA was extended to cover "every common carrier by air engaged in interstate or foreign commerce . . . and every air pilot . . . of such carrier." 45 U.S.C. §181. The Act provides, among other things, "for the prompt and orderly settlement of all disputes growing . . . out of the interpretation or application of agreements covering rates of pay, rules or working conditions." 45 U.S.C. §151a. Disputes about the interpretation or application of a collective bargaining agreement (CBA) must be

referred to an adjustment board, whose rulings are final and binding on the parties. 45 U.S.C. §§153(m), 184. In the parlance of the RLA, these cases are "minor disputes" if they "involve controversies over the meaning of an existing collective bargaining agreement in a particular fact situation." *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 253 (1994) (citation omitted). Such cases must be handled by the RLA's arbitration procedures, including "an employer's internal dispute-resolution procedures and an adjustment board established by the unions and the employer." *Monroe v. Missouri Pacific R.R. Co.*, 115 F.3d 514, 516 (7th Cir. 1997).

It is the "general rule that the RLA will not bar a plaintiff from bringing a claim under an independent federal statute in court (because such claims are generally independent of the CBA and will be adjudicated under non-CBA standards)." *Brown*, 254 F.3d at 667-68. But if the plaintiff's lawsuit can be dispositively resolved by interpreting the CBA, then the case must be dismissed in favor of the RLA's exclusive and mandatory dispute resolution procedures. *Hawaiian Airlines*, 512 U.S. at 261-62; *Brown*, 254 F.3d at 668. On the other hand, there is no preclusion if the CBA is relevant to the dispute but not dispositive, *Brown*, 254 F.3d at 664, or if a plaintiff's claim merely tangentially touches a CBA. *Monroe*, 115 F.3d at 519. In short, the plaintiff's claim is not precluded unless the parties disagree about the interpretation of the CBA and that dispute is dispositive of the plaintiff's claim. *Brown*, 254 F.3d at 664 (citing *Loewen Group International, Inc. v. Haberichter*, 65 F.3d 1417, 1423 (7th Cir. 1995)). If the parties agree about the meaning of the CBA, or if one party asserts an undisputed interpretation, then the Court need not interpret the provisions but can simply apply the agreed definitions. *See Livadas v. Bradshaw*, 512 U.S. 107, 124 (1994) (noting that "when the meaning of contract terms is not the subject of dispute, the bare fact that a collective-bargaining agreement will be consulted in

3

the course of state-law litigation plainly does not require the claim to be extinguished").

The plaintiffs' ADEA claim is that American's denial of the opportunity to down-bid and the resulting forced retirement constituted discrimination because of their age. *See* 29 U.S.C. § 623(a)(1). The plaintiffs are alleging disparate treatment, so "liability depends on whether the protected trait (under the ADEA, age) actually motivated the employer's decision." *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610 (1993).

The Court is persuaded that plaintiffs' claim turns on a question that constitutes a "minor dispute" subject to the RLA. American contends that its policy and practice is to preclude pilots disqualified for any reason (not just the FAA rule) from down-bidding to a lower position in the cockpit, because cockpit positions are reserved for those who are qualified to be, or may ultimately become qualified to be pilots. *See* AA Mem. in Support of Mot. for Summ. Judgt. at 5, 9-10; AA's R. 56.1 Stmt. of Mtrl. Facts ¶¶64-73; AA Reply in Support of Mot. for Summ. Judgt. at 3-9. If this is so, then American will prevail. There appears to be no evidence that American's alleged practice is based on age, and *Hazen Paper* makes it clear that decisions based on factors that are merely associated with age do not violate the ADEA; rather, there must be proof of an age-discriminatory motive or that the factor used as the ostensible basis for the decision is a pretext for age-stereotyping. *Hazen Paper*, 507 U.S. at 610; *EEOC v. Francis W. Parker School*, 41 F.3d 1073, 1077-78 (7th Cir. 1994). Put another way, the alleged disparate impact of an age-neutral policy is not a basis for liability under the ADEA. *See, e.g., Erickson v. Northeastern Illinois University*, 207 F.3d 945, 949 (7th Cir. 2000). Thus if American can establish the existence of its "no down-bidding" (or "up-or-out") policy, it likely will prevail.

Plaintiffs, however, contend that American has no such policy. Specifically, they argue

4

that the policy described in American's summary judgment motion "appears to be a litigation strategy which was developed for this case" rather than an actual policy or practice that American has followed in the manner it claims. Pltfs' Mem. in Opp. to Mot. for Summ. Judgt. at 8-9. They dispute at length that any such policy or practice existed. *See id.* at 9-12.

The fact that the parties dispute the existence of American's claimed policy does not necessarily mean that the dispute is subject to the RLA's mandatory dispute resolution procedures. For the RLA to apply, the dispute must be one that involves interpretation of the CBA. By this, however, we mean not just the black-letter language of the agreement itself, but also any "norm[s] that the parties have created but have omitted from the collective bargaining agreement's *explicit* language." *Hawaiian Airlines,* 512 U.S. at 264 (emphasis in original).

These criteria are met in this case. Plaintiffs contend that they are entitled to down-bid by virtue of their seniority rights under the CBA. In response to American's argument that its practice is justified by a "bona fide seniority system" thus insulating it from liability under 29 U.S.C. §623(f)(2)(A), plaintiffs argued that they "are not seeking anything to which they are not entitled under the CBA. The CBA preserves plaintiffs' seniority with all the rights and benefits they have earned over their careers. It does *not* prevent down-bidding, does *not* prevent employment after age 60, and does *not* require pilots to re-qualify and serve as Captain or copilot once they have met the 'Qualify in Turn' requirement." Pltfs' Mem. in Opp. to Mot. for Summ. Judgt. at 20

For its part, American contends that the CBA's "qualify-in-turn" provision in effect codifies the "up-or-out" policy that reserves cockpit seats for pilot-qualifiable employees who will eventually upgrade. The provision states that "[a]ll pilots are required to qualify in turn for

5

the next higher pilot category at their base. In no case shall a probationary pilot be assigned to upgrade to a captain vacancy, and in no case shall a flight officer who has not upgraded to first officer [copilot] be assigned to upgrade to a captain vacancy. A pilot will only be required to upgrade to first officer one (1) time. A pilot will only be required to upgrade to captain one (1) time." CBA §17(O). American maintains that §17(O) codifies the "up-or-out policy" and allows American to prohibit a down-bid by a disqualified pilot, even one who had previously been qualified. AA Reply in Support of Mot. for Summ. Judgt. at 8-9 (citing the *Tresner* arbitration decision). And although the plaintiffs now argue that the qualify-in-turn provision is "wholly irrelevant in this litigation," Pltfs' Resp. to Mot. to Dism. at 4, they had earlier cited §17(O) as support for the assertion that "[o]nce they qualified as Captains, they fully met the 'Qualify in Turn' ('up or out') policy and need not do so again." Pltfs' Mem. in Opp. to Mot. for Summ. Judgt. at 8. American's reply to this was that the plaintiffs "are just wrong." AA Reply in Support of Mot. for Summ. Judgt. at 1.

Thus it is clear that the parties have a dispute over the meaning of the CBA as that term is defined in *Hawaiian Airlines*. And as we have previously stated, resolution of this dispute would be dispositive of the plaintiffs' claims. The plaintiffs conceded the critical importance of the meaning of §17(O) when they argued that American had no age-neutral policy prohibiting disqualified pilots from down-bidding. Pltfs' Mem. in Opp. to Mot. for Summ. Judgt. at 8. They interpreted §17(O) to mean that "[w]hile pilots who fail to 'Qualify in Turn' following deferral may be terminated in accordance with the CBA, there is no evidence that pilots who lack proficiency are prohibited from down-bidding to a position in which they can qualify." *Id.* at 9-10. Without an interpretation of the CBA that agrees with the plaintiffs' interpretation and

6

disagrees with American's, the plaintiffs cannot show that American treated younger, disqualified pilots more favorably or that American's treatment of them was motivated by their age. If this Court agreed with American's interpretation of the CBA, American's assertion that it bars down-bidding by all disqualified pilots would stand unchallenged, and plaintiffs would be unable to prove a case under *Hazen Paper*.

For these reasons, plaintiffs' lawsuit presents a "minor dispute" as that term is defined in the RLA, because "the resolution of the plaintiff's claim requires interpretation of the CBA." *Brown*, 254 F.3d at 658. It is unfortunate that this issue did not emerge until this case had been pending for almost six years. But because RLA-preclusion implicates the Court's subject matter jurisdiction, the issue is not subject to a claim of waiver. *See, e.g., In re Brand Name Prescription Drugs Antitrust Litigation*, 248 F.3d 668, 669 (7th Cir. 2001) ("objections to subject-matter jurisdiction cannot be waived, and are not forfeited, until a case has gone through to final judgment after exhaustion of all appellate remedies.")

## Conclusion

The fulcrum of the plaintiffs' claim is that American treated them less favorably than younger pilots and thereby violated the ADEA. The Court cannot determine the answer to that question without interpreting the collective bargaining agreement between the pilots' union and American. Accordingly, plaintiffs' lawsuit turns on a "minor dispute" within the meaning of the Railway Labor Act, and this Court is without jurisdiction over the subject matter. Defendant's motion to dismiss [Docket No. 234-1] is granted. Defendant's motion for summary judgment [No. 201-1], plaintiffs' motion for partial summary judgment [No. 206-1], and plaintiffs' motions to strike and exclude various matters [Nos. 220-1, 229-1] are denied as moot. The case

is dismissed for lack of subject matter jurisdiction.

Date:   August 29, 2001

                                                                _____
                                                                MATTHEW F. KENNELLY
                                                                United States District Judge